In re: GREGORY ROCKHOUSE RANCH,
        Case No. 05-16120 MR

and

MARJORIE PARRISH GREGORY,
        Case No. 05-16255 MR

and

DEBORAH LYN GREGORY,
        Case No. 05-16261 SR

and

DONALD WAYNE GREGORY,
        Case No. 05-16301 MR

and

GREGORY RANCH, a Partnership,        Case No. 11-05-15405 MR
        Jointly Administered

## MEMORANDUM OPINION

THIS MATTER is before the Court on confirmation of Debtors' plans of reorganization.[1] Clark Glenn and Glenn's Water Well Service, Inc. (together, "Glenn") objected to confirmation and voted to reject each of the Debtors' plans of confirmation. Because the Debtors have separately classified Glenn's claim as an impaired class in each of the plans, and because Glenn

---

[1] The Debtors' bankruptcy proceedings are jointly administered, not consolidated. Thus the jointly administered plan of reorganization in fact constitutes five separate plans of reorganization. *See In re Amdura Corp.,* 121 B.R. 862, 868 (Bankr.D.Colo. 1990) (noting that "joint administration does not create a substantive consolidation" of debtors).

1

has voted to reject Debtors' plans, Debtors must proceed under 11 U.S.C. § 1129(b)[2] in order to attempt to "cram down" confirmation over Glenn's rejecting classes. *See In re Lernout & Hauspie Speech Products, N.V.,* 301 B.R. 651, 660 (Bankr.D.Del. 2003), *aff'd,* 308 B.R. 672 (D.Del. 2004) ("Where . . . at least one impaired class of claims has not consented to the proposed plan, the 'cram down' provisions of 11 U.S.C. § 1129(b)(1) come into play."). "Cram down" under 11 U.S.C. § 1129(b) nevertheless requires acceptance by at least one non-insider impaired class of creditors. *See* 11 U.S.C. § 1129(a)(10).[3] Glenn asserts that the Debtors' plans

---

[2]That section provides:
>Notwithstanding section 510(a)of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

>11 U.S.C. § 1129(b)

Paragraph (8) of 11 U.S.C. § 1129(a) provides:
>With respect to each class of claims or interests --
>>(A) such class has accepted the plan; or
>>(B) such class is not impaired under the plan.

>11 U.S.C. § 1129(a)(8).

Thus, a plan proponent can proceed to confirmation under 11 U.S.C. § 1129(b) even if an impaired class has not accepted the plan.

[3]That section provides:
>If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

>11 U.S.C. § 1129(a)(10).

*See also, In re Duval Manor Associates,* 191 B.R. 622, 626 (Bankr.E.D.Pa. 1996)(noting that when proceeding under the cramdown provisions of § 1129(b), "a threshold and

2

"artificially impair" the claim of The Carlsbad National Bank ("CNB") for the sole purpose of manufacturing an accepting vote from a non-insider, impaired class of claims, and that artificial impairment under such circumstances fails to satisfy 11 U.S.C. § 1129(a)(10). This Court agrees, and will deny confirmation of Debtors' plans.

DISCUSSION

Impairment is addressed in 11 U.S.C. § 1124, which provides, in relevant part:

> [A] class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan --
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest[.]

11 U.S.C. § 1124(1).

A class of claims is, therefore, impaired under 11 U.S.C. § 1124(a)(1) when the plan alters the creditors' legal, equitable, or contractual rights in some way. *See* 7 Collier on Bankruptcy, ¶ 1124.02 (Alan N. Resnick and Henry J. Sommer, eds., 15h ed. rev. 2006)("Any alteration of these rights constitutes impairment . . ."); *In re Union Meeting Partners,* 160 B.R. 757, 771 (Bankr.E.D.Pa. 1993) ("'[I]mpairment' is a term of art and includes virtually any alteration of a claimant's rights."). Debtors' plans include the following language regarding the claim(s) of CNB[4]:

---

potentially dispositive issue is the . . . hurdle present in 11 U.S.C. § 1129(a)(10)[.]").

[4]The same language is included with respect to CNB's Class 12(c) claim based on a lien on accounts and water rights of Gregory Rockhouse Ranch, LLC; CNB's Class 12(d) claim based on a loan to Union Industrial, Inc. collateralized by a mortgage on Gregory Rockhouse Ranch, LLC; CNB's Class 12(e) claim against Gregory Rockhouse Ranch, LLC; CNB's Class 14(a) secured claim against Deborah Gregory, based on a loan to Scott and Deborah Gregory; CNB's Class 15(e) claim against Marjorie Gregory based on a loan to Larry and Marjorie Gregory; CNB's Class 16(b) unsecured claims against Gregory Ranch, a Partnership, as guarantor; CNB's Class 16(c) secured claim against Gregory Ranch, a Partnership (Class 16(c)

3

All principal and interest due on these loans shall be paid in full in a manner as modified by the Plan such that if any payment due is not paid within ten (10) days of its due date, prior to acceleration, the Bank shall give the Debtor and any guarantors of this obligation written notice of the default. If the Debtor or any guarantors fail to cure the default within twenty (20) days from the date of said notice, the Bank may exercise its rights and enforce its remedies under its pre-petition loan agreements with the Debtors. Subject to the foregoing, and notwithstanding Article VII, Paragraph F of this [sic] Disclosure Statement, all other provisions of the Bank's pre-petition loan agreements with the Debtors remain in full force and effect.

Glenn asserts that the Debtors' proposed treatment of CNB's claims does not actually impair CNB's claim because it merely delays CNB's ability to collect on its loans by requiring CNB to give a notice of default. The language in Debtors' plans of reorganization clearly provides that CNB's loans will be paid in full with interest, and that "all other provisions of the Bank's pre-petition loan agreements with the Debtors remain in full force and effect." This language confirms that with the exception of the additional default notice requirements, CNB's rights remain unaltered in all other respects. Given that the Debtors need CNB's vote in order to comply with 11 U.S.C. § 1129(a)(10),[5] Glenn asserts that the minimal "impairment" of CNB's pre-petition legal, equitable, and contractual rights is purely artificial, engineered by the Debtors for the sole purpose of gerrymandering an accepting impaired class, and, is therefore, improper. There is case law to support this conclusion.

---

was added pursuant to the First Amended Motion to Amend Second Amended Chapter 11 Plan Concerning Treatment of Certain Claims of The Carlsbad National Bank and Frank Bertagnolli - Docket # 335); CNB's Class 17(b) contingent unsecured claims guaranteed by Rockhouse Ranch; CNB's Class 18(b) allowed contingent unsecured claims guaranteed by Donald Wayne Gregory; CNB's Class 19(b) allowed contingent unsecured claim guaranteed by Deborah Lyn Gregory and/or Scott Gregory; CNB's Class 20(b) allowed contingent unsecured claims guaranteed by Marjorie Parrish Gregory and/or her husband Larry Gregory.

[5]CNB is the only non-insider class voting to accept the plans of reorganization proposed by Gregory Rockhouse Ranch, LLC, and the Gregory Ranch, a partnership.

4

In *In re Dean,* 166 B.R. 949, 954 (Bankr.D.N.M. 1994), this Court found that the Debtor failed to satisfy 11 U.S.C. § 1129(a)(10) because the Debtor "improperly impaired a class for [the] purpose of trying to literally satisfy the cram down requirements." The plan in *Dean* delayed payment of a class of claims for sixty days from the effective date. *Id.* The Court found that the Debtor could have paid these claims immediately and failed to present any business reason for the sixty-day delay other than for the purpose of manufacturing an impaired, accepting class. *Id.*

Similarly, in *In re Windsor on the River Associates, Ltd.,* 7 F.3d 127, 132 (8th Cir. 1993), a case relied upon in *Dean,* the Eighth Circuit held that "for purposes of 11 U.S.C. § 1129(a)(10), a claim is not impaired if the alteration of rights in question arises solely from the debtor's exercise of discretion." The Debtor in *Windsor* proposed a plan that would delay payment to trade creditors for sixty days after the effective date. *Id.* The *Windsor* court found that such claims were "arbitrarily and artificially impaired" because the only purpose served by the delay in payment was to "ensure approval by at least one 'impaired' class as required by section 1129(a)(10)." *Id.* at 132-133. As stated by the bankruptcy court in *In re Daly,* 167 B.R. 734, 737 (Bankr.D.Mass. 1994) (citation omitted), "[a] Debtor may not satisfy § 1129(a)(10) by manufacturing an impaired class for the sole purpose of satisfying § 1129(a)(10)and thereby forcing the plan upon a truly impaired class that has voted to reject the plan."[6]

---

[6]*See also, In re Investors Fla. Aggressive Growth Fund, Ltd.,* 168 B.R. 760, 766-767 (Bankr.N.D.Fla. 1994) (stating that "[t]he remedy for this situation is to treat the artificially impaired class as unimpaired for purposes of § 1129(a)(10)" and finding that Debtors' proposed payment of unsecured creditors over a nine-month period following confirmation, where it was apparent that the Debtor had resources to pay such creditors on the effective date, and where the

5

On the other hand, some courts conclude that because no language in the bankruptcy code restricts impairment, any change to a creditor's rights, whether such change is *de minimus*, or even if it has the effect of enhancing a creditor's position, constitutes impairment sufficient to satisfy 11 U.S.C. § 1129(a)(10). *See, e.g., In re L & J Anaheim Associates,* 995 F.2d 940, 943 (9th Cir. 1993) (concluding that plan proponent satisfied 1129(a)(10), even where the "impairment" arguably enhanced the creditor's position, noting that "[t]here is no suggestion . . . that only alterations of a particular kind or degree can constitute impairment."); *Duval Manor,* 191 B.R. at 629. These cases point out that the language in 11 U.S.C. § 1129(a)(10) merely requires an acceptance by an impaired class of creditors, not including classes of insider claims; but does not specifically exclude "artificially" impaired claims. *See, e.g., In re Landing Associates, Ltd.,* 157 B.R. 791, 813 (Bankr.W.D.Tex. 1993) (noting that "[s]ection 1124 defines, but does not restrict, impairment."); *L & J Anaheim,* 995 F.2d at 943 ("[T]he plain language of section 1124 says that a creditor's claim is 'impaired' unless its rights are left 'unaltered' by the Plan.").

Perhaps for this reason, some courts that conclude that artificial impairment is impermissible justify their position by construing artificial impairment under the rubric of 11

---

Debtor offered no credible reason for the need to delay payment, constituted artificial impairment); *In re Willows Convalescent Centers Ltd. P'ship,* 151 B.R. 220, 222 (D.Minn. 1991) ("The law is clear that a debtor may not manufacture impaired classes merely for the purpose of garnering votes of such classes in favor of its plan.")(citing *Hanson v. First Bank of South Dakota,* 828 F.2d 1310, 1313 (8th Cir. 1987)); *In re Club Associates,* 107 B.R. 385, 401 (Bankr.N.D.Ga. 1989), *aff'd,* 956 F.2d 1065 (11th Cir. 1992) ("An alteration which is clearly intended only to create an impaired class to vote in favor of a plan so that a debtor can effectuate a cramdown, however, will not be allowed.")(citing *In re Meadow Glen Limited*, 87 B.R. 421 (Bankr.W.D.Tex.1988)(remaining citation omitted)).

6

U.S.C. § 1129(a)(3)'s good faith requirement.[7] The flip side to that argument, of course, is that "it seems counterintuitive to assail the good faith of a Debtor who merely avails itself of a right afforded to it under the plain reading of a statute." *Duval Manor,* 191 B.R. at 629.[8] This Court declines to resolve the issue based on a consideration of the Debtor's good faith in proposing a confirmable plan, but instead finds that artificial impairment is not permissible under 11 U.S.C. § 1129(a)(10) because it frustrates its intended purpose.

The purpose of 1129(a)(10) "is to provide some indicia of support by affected creditors and prevent confirmation where such support is lacking." *In re Lettick Typografic, Inc.,* 103 B.R. 32, 38 (Bankr.D.Conn. 1989)(citations omitted). And because "Chapter 11 is designed to promote consensual reorganization plans, a proposal that has no support from impaired creditors cannot serve its purpose." *Windsor,* 7 F.3d at 131. As noted by the bankruptcy court in *Duval Manor,* in theory, "the requirement of an accepting impaired class ensures that a given

---

[7]*See* 7 Collier on Bankruptcy ¶ 1129.03[10][a] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2006) (noting that "other cases . . . decline to import an intent or purpose requirement into section 1129(a)(10), and treat claims of improper classification as raising questions of good faith."); *In re Daly,* 167 B.R. at 737 ("This contrived and artificial impairment can be viewed either as a violation of the requirement of an accepting, impaired class, § 1129(a)(10), or as a violation of the requirement that the plan be proposed in good faith, § 1129(a)(3), or both."); *In re Sandy Ridge Dev. Corp.,* 881 F.2d 1346, 1353 (5th Cir. 1989)(remanding for determination of whether plan that included a "technically impaired" class for purposes of satisfying § 1129(a)(10) was proposed good faith). *See also, In re Hotel Associates of Tucson,* 165 B.R. 470, 475 (9th Cir. BAP 1994) (discussing *L & J Anaheim Associates,* and stating that, under the holding in that case, "a plan proponent's motivations will not be questioned in determining whether a class is impaired under Section 1129(a)(10), but will be examined in deciding whether a plan was proposed in bad faith.").

[8]*See also In re Global Ocean Carriers, Ltd.,* 251 B.R. 31, 42 (Bankr.D.Del. 2000) (noting that although the timing of the debtor's modification suggests that "the modified treatment was proposed in order to meet the requirements of section 1129(a)(10), we are loathe to adopt a rule which chills the ability of a debtor to make last minute deals in order to achieve a consensual plan or otherwise reduce opposition to the plan.").

7

cramdown plan has at least a modicum of support from adversely affected creditors." 191 B.R. at 628.

As analyzed above, the "impairment" under the Debtors' plans of reorganization is an additional notice of default provision which delays CNB's ability to enforce its rights under its loan documents, but specifically acknowledges that all other rights under the loan documents shall remain in full force and effect. Debtors and CNB assert that this provision serves a legitimate business purpose by insuring that each Debtor has notice and an opportunity to cure in the event one of them fails to perform, given the inter-related nature of the Debtors and their various plans. But precisely because the Debtors are inter-related, all Debtors will know at the outset when the primary obligor fails to make a payment.

CNB further compares its position under Debtors' plan to that of the creditor in *L & J Anaheim,* wherein the court concluded that the debtor satisfied 1129(a)(10) by leaving the creditor with "no opportunity to invoke the substantive remedies or procedural mechanisms available to it at state law [and] [i]nstead . . . required that [the creditor's] collateral be sold at public auction under procedures mandated by federal bankruptcy law." 995 F.2d at 943. In contrast, Debtors' treatment of CNB does not take away CNB's rights and remedies under state law and its loan documents, but merely delays CNB's ability to act on those rights and remedies during the notice and cure period. It is clear that the Debtors included this provision in order to qualify CNB's class of claims as an impaired class and technically satisfy 11 U.S.C. § 1129(a)(10), and cram down their Plans in the face of rejecting classes. Glenn and CNB are the Debtors' largest creditors, and Debtors' plans provide that CNB will be paid according to its loan documents, while Glenn will be paid over time, and only in the event the Debtors fail to

8

overturn Glenns' judgment on appeal.[9] The "impairment" of CNB's claim as compared to Glenn's, is virtually non-existent. *Cf. Daly,* 167 B.R. at 736-737 (denying confirmation on artificial impairment, and noting that the extent of the impairment of the accepting "impaired" class paled in comparison to the impairment of the unsecured claims).

Debtors' artificial impairment of CNB's claim solely for the purposes of cramdown is particularly apparent in light of the Debtors' First Amended Motion to Amend Second Amended Chapter 11 Plan Concerning Treatment of Certain Claims of the Carlsbad National Bank and Frank Bertagnolli ("Second Modification"), wherein the Debtors disclose that they need to modify the plan to add a recently disclosed claim of CNB based on a loan collateralized by a mortgage and lien of water rights owned by Gregory Ranch, a partnership. Without this claim, Gregory Ranch, a partnership, had no impaired class of claims to accept its plan. The Second Modification includes the same language as the other classes of CNB claims, requiring notice of default with an opportunity to cure, but providing further that "[a]ll other provisions of The Carlsbad National Bank's pre-petition secured claim against the water rights of Gregory Ranch remain in force and effect."

The following plans are fully contingent upon the acceptance of CNB: Gregory Rockhouse Ranch, LLC and Gregory Ranch, a partnership.[10] Because Gregory Rockhouse

---

[9]*See Second Amended Jointly Administered Debtors' Plan of Reorganization,* pages 31 - 35 (stating that "The allowance of the Glenn Claim is subject to the appeal" and proposing to make quarterly payments of $30,000.00 or more per quarter on Glenn's claim to an escrow account, pending resolution of the appeal, and reserving to the Debtors "the right to apply to the Bankruptcy Court to extend the period to make payment and avoid default, upon showing of good cause . . .")

[10]The tally of ballots for Gregory Ranch, a partnership also reflects acceptance by Class 25, an impaired class comprised of David Anderson. This ballot cannot be considered for

9

Ranch, LLC is the primary source of funding for all five plans[11], and because Gregory Rockhouse Ranch, LLC's plan cannot be confirmed, the Court finds that all five plans cannot be confirmed at this time. And because the Court finds that confirmation must be denied based on the Debtors' failure to comply with 11 U.S.C. § 1129(a)(10), the Court declines to address Glenn's other objections to confirmation.

In sum, the Court holds that artificial impairment is not permissible where the change in creditor's rights is minimal, and where it is clearly apparent that the impairment was engineered by the plan proponent solely for the purpose of complying with 11 U.S.C. § 1129(a)(10). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law issued in accordance with Rule 7052, Fed.R.Bankr.P. An appropriate order will be entered.

_____
MARK B. McFEELEY
United States Bankruptcy Court

---

purposes of 11 U.S.C. § 1129(a)(10) because Mr. Anderson is the son in law of one of the partners of Gregory Ranch, a partnership, and, therefore, is an insider. *See* 11 U.S.C. § 101(31)(C) (defining "insider" where the debtor is a partnership as a "relative of a general partner").

[11]*See* Second Amended Jointly Administered Debtors' Plan of Reorganization, page 35:
> To the extent that the Jointly Administered/Related Debtors, some of them or all of them, are jointly and severally liable for the payment of a debt, *i.e.,* it is a joint debt, and held by a creditor of the Jointly Administered estate, the funds for the payment of the debt will be derived from the operating income of the Joint Debtors, jointly and severally liable for payment of the claim. In this regard, Gregory Rockhouse Ranch, LLC has posted primarily as the deposit to pay the Glenn Claim subject first to payment of the Administrative Convenience Class and then to the Glenn Claim, . . .

Case 05-15405-j11    Doc 401    Filed 12/21/07    Entered 12/21/07 11:13:33 Page 10 of 11

COPY TO:

Daniel J Behles
Attorney for Clark Glenn and Glenn's Water Well Service
226-A Cynthia Loop NW
Albuquerque, NM 87114-1100

Jennie D Behles
Attorney for Gregory Ranch, a Partnership and Donald Wayne Gregory
PO Box 7070
Albuquerque, NM 87194-7070

Louis Puccini, Jr.
Attorney for Gregory Rockhouse Ranch, LLC, Deborah Lyn Gregory, Marjorie Gregory
PO Box 30707
Albuquerque, NM 87190-0707

George "Dave" Giddens, Jr.
Attorney for The Carlsbad National Bank
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111-1229